# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PROGRESSIVE MARKETING, INC. | Case No. 2:17-cv-02644-JAM-DB |
| Plaintiff, | [~~PROPOSED~~] ORDER GRANTING DEFENDANT AND COUNTERCLAIMANT NUOVA RICAMBI S.R.L. MOTION FOR SUMMARY JUDGMENT |
| v. | |
| NUOVA RICAMBI S.R.L. AND MARCELLO ZANESI | |
| Defendants. | |

NUOVA RICAMBI S.R.L. and MARCELLO ZANESI,

        Counterclaimants,

v.

PROGRESSIVE MARKETING, INC.

        Counterclaim-Defendant.

1  Defendant and Counterclaimaint Nuova Ricambi, s.r.l.'s ("NRSRL") Motion

2  for Summary Judgment or, in the Alternative, Partial Summary Judgment (the

3  "Motion") came on for hearing on August 27, 2019.  The Court having considered

4  the Motion, the opposition filed by Progressive Marketing, Inc. ("Progressive"),

5  any oral argument, as well as the pleadings and documents on file, and for all the

6  reasons stated in the attached transcript[1] rules as follows:

7       1.     The Court grants NRSRL's motion for summary judgment on

8  Progressive's first cause of action for infringement of a federally registered

9  trademark;

10      2.     The Court grants NRSRL's motion for summary judgment on

11 Progressive's second cause of action for federal trademark infringement, false

12 designation of origin and unfair competition;

13      3.     The Court grants NRSRL's motion for summary judgment on

14 Progressive's third cause of action for common law trademark infringement unfair

15 petition;

16      4.     The Court grants NRSRL's motion for summary judgment on

17 Progressive's fourth cause of action for breach of contract;

18      5.     The Court grants NRSRL's motion for summary judgment on

19 Progressive's fifth cause of action for unfair competition under California Business

20 & Professions Code § 17200, *et seq.*;

21      6.     Accordingly, the Court grants NRSLR's motion for summary

22 judgment on all causes of action Progressive brought against NRSRL.

23 / /

24 / /

25

26

27

28

---

[1] The Reporter's Corrected Transcript of Proceedings RE: Motions for Summary Judgment held August 27, 2019 ("RT") stands as the basis for the Court's rulings and is attached hereto as **Exhibit A**.

1      7.    The Court also grants NRSRL's motion for summary judgment on its

2 first cause of action for the cancellation of trademark registration No. 3,873,210.

3

4 **IT IS SO ORDERED.**

5

6 Dated: *October 19*, 2019

7

8                             Judge John A. Mendez

                              United States District Court

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT A**

1         IN THE UNITED STATES DISTRICT COURT
           EASTERN DISTRICT OF CALIFORNIA
2         BEFORE THE HONORABLE JOHN A. MENDEZ

3    PROGRESSIVE MARKETING, INC.,

4              Plaintiff,
     vs.                          Sacramento, California
5                                 No. 2:17-CV-02644
     SPROPARTS, LLC, et al.,      Tuesday, August 27, 2019
6                                 1:30 p.m.
               Defendants.
7    _____/

8                      --oOo--

9         REPORTER'S CORRECTED TRANSCRIPT OF PROCEEDINGS
                    PAGE 41, LINE 15
10            RE: MOTIONS FOR SUMMARY JUDGMENT

11                     --oOo--
     APPEARANCES:
12
     For the Plaintiff:      MURPHY, CAMPBELL, ALLISTON & QUINN
13                           MARK A. CAMPBELL
                             JESSICA B. COFFIELD
14                           Attorneys at Law
                             8801 Folsom Blvd., Suite 230
15                           Sacramento, CA  95826

16   For the Defendant       PETERSON WATTS LAW GROUP, LLP
     Sproparts, LLC and      GLENN W. PETERSON
17   La Marzocco USA, LLC:   Attorney at Law
                             2267 Lava Ridge Court, Suite 210
18                           Roseville, CA  95661

19   For the Defendant       FOX ROTHSCHILD LLP
     Nuova Ricambi, S.R.L.   JEFFREY H. GRANT
20   and Marcello Zanesi:    Attorney at Law
                             10250 Constellation Blvd., Suite 900
21                           Los Angeles, CA  90067

22   Official Reporter:      KACY PARKER BARAJAS
                             CSR No. 10915, RMR, CRR, CRC
23                           501 I Street
                             Sacramento, CA  95814
24                           kbarajas.csr@gmail.com

25   *Proceedings recorded by mechanical stenography.  Transcript
     produced by computer-aided transcription.*

1    SACRAMENTO, CALIFORNIA, TUESDAY, AUGUST 27, 2019, 1:30 PM

2                              --oOo--

3         THE CLERK:  Calling civil 17-2644, Progressive

4    Marketing, Incorporated versus Sproparts.

5         Can I have counsel state their appearances, please.

6         MR. CAMPBELL:  Yes.  I'm Mark Campbell for the

7    plaintiff, Progressive Marketing, Inc.

8         MS. COFFIELD:  Jessica Coffield here for plaintiff.

9         THE COURT:  Use the microphones, if you could.

10        MS. COFFIELD:  Sorry about that.  Jessica Coffield.

11        MR. GRANT:  Jeff Grant on behalf of defendant and

12   counterclaimant Nuovo Ricambi and Marcello Zanesi.

13        MR. PETERSON:  Good afternoon, your Honor.  Glenn

14   Peterson, Peterson Watts Law Group, for the defendants La

15   Marzocco and Sproparts.

16        THE COURT:  Okay.  Have a seat.  Make sure the

17   microphones are in front of you.

18        Mr. Grant, are you on the pleadings?

19        MR. GRANT:  I entered a notice of appearance last

20   week.

21        THE COURT:  Okay.  So you are intimately familiar with

22   the motion?

23        MR. GRANT:  Yes, your Honor.

24        THE COURT:  Okay.  There are a number of motions for

25   summary judgment before the Court this afternoon, and we'll

1    take them up.  Let me start with the evidentiary objections,

2    give you my reaction and response to those.

3            Progressive, the plaintiff, has objected to paragraphs

4    20 and 21 of the defendants' statement of undisputed facts.  In

5    paragraph 20, the statement says Progressive cannot create a

6    genuine dispute of material fact that the attorney who

7    represented it before PTO, all in caps, in 2010 did not know

8    the difference between a trade name and a trademark.  And

9    paragraph 20 of the undisputed facts statement says Progressive

10   cannot create a genuine dispute of material fact as to whether

11   the PTO relies on an applicant's declaration of superior use.

12           Progressive objected to these facts on the grounds

13   that the plaintiff's attorney is not a party to the action, and

14   second, the purported facts are not actually facts.  That is

15   correct.  These are statements or conclusions of law, not

16   facts.  So the Court sustains the objections.

17           We're going to refer to Nuovo Ricambi, S.R.L. as

18   NRSRL, all in caps.  They've raised objections to Exhibit 118

19   in Progressive's opposition as well as a number of statements

20   in Mr. Lemos's declaration.  They've also objected to

21   Exhibit 106.  In terms of the exhibits, Exhibit 118, it's a web

22   page that Mr. Campbell found on La Marzocco, L-a

23   M-a-r-z-o-c-c-o, on their website.  An evidentiary objection is

24   raised that the exhibit lacks foundation and it's hearsay.  The

25   statement of a party opponent is not hearsay, and Mr. Campbell

1    has established personal knowledge.  The objection to that

2    exhibit is overruled.

3         On Exhibit 106, which is the bill of sale, a company

4    in the asset sale agreement, the defendants object arguing that

5    Mr. Lemos failed to establish personal knowledge of the

6    exhibit, that argument I didn't find to have much merit.  The

7    objection to that exhibit would be sustained only to the extent

8    that the statements in this agreement are offered for the truth

9    of the matter asserted.

10        And then there were a number of objections to several

11   statements made in Mr. Lemos's declaration.  In particular,

12   paragraphs 11, 18 and 19, 31, 44 through 45 and 47 on the

13   grounds that Mr. Lemos lacks personal knowledge.  Those

14   objections to those specific statements have been and are going

15   to be sustained, other than if they're offered for state of

16   mind.  The Court has considered them for that purpose.

17   Paragraph 45 is hearsay.  There is no exception to the hearsay

18   rule, and the objection is sustained.

19        And then La Marzocco and Sproparts, that's spelled

20   S-p-r-o-p-a-r-t-s, also challenged Mr. Lemos's declaration a

21   bit more generally that his declaration is replete with

22   unsupported conclusory statements that are patently outside the

23   scope of his personal knowledge, and in particular they point

24   to paragraphs 18 and 34.  The objections to both of those are

25   sustained.

1    Having made those rulings, quite honestly it makes

2    little or no difference to the Court's overall view of the

3    motions for summary judgment.  Courts self-police in terms of

4    evidentiary objections.  Lawyers feel the need to make them, I

5    understand, but again they carry little or no weight in terms

6    of the actual merit or lack thereof of the motions for summary

7    judgment.

8    Okay.  Let me start with the motion made by the

9    individual Mr. Zanesi, Marcello, M-a-r-c-e-l-l-o, Zanesi.

10   Mr. Campbell, you named him in a counterclaim after answering

11   the counterclaim filed by NRSRL.  It honestly was somewhat

12   difficult to figure out why you brought a claim or what the

13   claim was for.  It appears to be a breach of contract claim

14   since the allegation says, let's see, if for some reason

15   Zanesi's claim to be successor in interest to the Nuovo Ricambi

16   USA, LLC is successful, he is then liable for the LLC's breach

17   of contract.  So I'm assuming it's a breach of contract claim.

18   Mr. Zanesi correctly points out that he's not a party

19   to the contract, and the contract doesn't purport to confer

20   Progressive rights to the Nuovo Ricambi USA trademark.  You

21   didn't file any specific opposition to his motion for summary

22   judgment.  Normally when that happens, I take that as a

23   concession that there really isn't any basis for bringing a

24   claim against him, so I'm not sure what you think is the basis

25   for allowing the counterclaim against him to go forward.  I'll

1    give you an opportunity to hear from you, but I didn't see

2    anything in your opposition that addressed that specifically.

3         MR. CAMPBELL: Yes, your Honor. I was taken by

4    surprise by that motion. I guess in hindsight maybe I could

5    have assumed that they were going to file a motion for

6    Mr. Zanesi on his individual claim, but that was never part of

7    our meet-and-confer process. So I think if I had it to do all

8    over again I would have brought it up at the time at the meet

9    and confer.

10        But so when I got it, I mean, I looked at it and I

11   said, well, the basis for this, they're admitting here that

12   he's not a party to the contract. And if he's not a party to

13   the contract, he can't sue on the contract. So his action's

14   barred by that admission, and I felt like with that out of the

15   way, then they were right.

16        THE COURT: Okay. So you're conceding that you

17   don't -- you can't bring a counterclaim. I'm not -- I don't

18   have his counterclaims --

19        MR. CAMPBELL: I understand.

20        THE COURT: -- in front of me. I'm just focusing on

21   what is before me.

22        MR. CAMPBELL: Yes.

23        THE COURT: Okay. So I am going to grant summary

24   adjudication/summary judgment in favor of Mr. Zanesi on his

25   motion for summary judgment on the breach of contract

1    counterclaim.

2         Okay.  And I want to turn to NRSRL's motion for

3    summary judgment just on the claims brought by Progressive.  So

4    on the complaint itself, there's five claims, and beginning

5    with the breach of contract claim, again I'm not sure your

6    theory as to how you think you can file a breach of contract

7    claim against NRSRL under the asset sales agreement when they

8    weren't a party to that contract.  There's two reasons that

9    they give as to why they think you can't maintain that claim.

10   One is that they weren't a party to the asset sale agreement,

11   and second, and we'll get into this, but that the asset sale

12   agreement in fact didn't purport to transfer ownership of any

13   trademark.  Just focusing on that first reason though, again

14   it's undisputed, right?  They're not a party to that asset sale

15   agreement?

16        MR. CAMPBELL:  Well, in the sense of being --

17   appearing with that name of that entity on a signature line,

18   that's the case.  But we contend that Mr. Zanesi, Sr. provided

19   a broad authorization to his son to act on behalf of that

20   entity.  That is 101, Exhibit 101.

21        THE COURT:  It's attached to your complaint too,

22   right?

23        MR. CAMPBELL:  No.  That is not.

24        THE COURT:  The agreement for purchase and sale of

25   assets?

1     MR. CAMPBELL:  It's a different document.  I was

2  referring to --

3     THE COURT:  Isn't that the contract we're talking

4  about?

5     MR. CAMPBELL:  I think it's part of the group of

6  documents that makes up the contract as a whole.

7     THE COURT:  Well, your breach of contract claim is for

8  that -- an alleged breach of that agreement, right?

9     MR. CAMPBELL:  We didn't know of the existence of this

10  Exhibit 101 at the time it was filed.  We contended in the

11  complaint that Mr. Zanesi was acting -- Mr. Zanesi, Jr. was

12  acting as an agent of the S.R.L. at the time of the

13  negotiations and at the time the written agreement was drafted,

14  redrafted, and signed.  Subsequently, we --

15     THE COURT:  But the contract itself contradicts that.

16  I mean, there's nothing in here that mentions NRSRL at all,

17  unless I'm looking at the wrong contract, but I don't think I

18  am.  Am I incorrect, Mr. Grant?

19     MR. GRANT:  No, your Honor.

20     THE COURT:  Your client's not a party to this

21  contract.

22     MR. GRANT:  That's correct, your Honor.

23     MR. CAMPBELL:  There is a letter from Mr. Zanesi, who

24  is the CEO of the SNC, stating that he's giving his son --

25     THE COURT:  That's fine.  But the contract still

1   doesn't include -- again, if that's your argument, I understand

2   it.  I don't in any way think it allows you to maintain the

3   breach of contract claim, but if that's all, I read that

4   argument in your opposition.  Is there anything else you're

5   relying on other than that?

6          MR. CAMPBELL:  Well, all of the circumstances

7   surrounding the negotiation of the written agreement, the fact

8   that Mr. Zanesi, Jr. was working for SNC at the time,

9   admittedly was spending half of his time in Italy working there

10  and half in the United States, the fact that he pled in his

11  answer and counterclaims that he was in charge of the export

12  function of that entity and was present negotiating, all of

13  those things go into our allegation that, when he made the

14  representations that are contained in that written contract, he

15  was authorized to do that expressly by the letter of authority

16  and also impliedly by all the circumstances.

17         THE COURT:  Okay.  I understand your argument.  The

18  second part of the argument as to why you can't maintain the

19  breach of contract claim is in fact the contract itself doesn't

20  transfer ownership of a trademark.  It transfers ownership of a

21  trade name and, as you point out, goodwill.  Your response in

22  the statement of undisputed facts in the opposition brief is

23  that transfer of goodwill in effect is, as a matter of law, a

24  transfer of the trademark.  I'm simplifying but that basically

25  was your response to the argument.  You didn't get a trademark.

1   You got a trade name and goodwill in the asset purchase

2   agreement.  There's nothing in any contract that I've seen

3   that's been submitted by the parties that uses the phrase

4   trademark or purports to transfer a trademark in this asset

5   purchase agreement, again reading the four corners of the

6   documents.

7         So am I understanding your argument right that because

8   the word "goodwill" is included in the contract, your argument

9   is, as a matter of law, I should consider that to be a transfer

10  of the trademark?

11        MR. CAMPBELL:  I think when a trade name is conveyed

12  in conjunction with the goodwill, I rely upon the cases that

13  say the goodwill is inseparable from the trademark, and there

14  are several cases like that.  So that's -- that is our

15  argument.

16        THE COURT:  Okay.

17        Okay.  I think you covered this in your briefs,

18  Mr. Grant, but I wanted to give you a chance to respond if you

19  want or add anything to what's already in your briefs.

20        And Mr. Peterson, I'm not sure, but I don't -- maybe

21  I'm wrong, but I didn't get the impression that your clients

22  were named in the breach of contract claim.

23        MR. PETERSON:  They're not.

24        THE COURT:  Okay.  Go ahead.

25        MR. GRANT:  Yes, your Honor.  On page 4 of 14 of our

1   motion we identified some Ninth Circuit authority that draws a

2   very bright line between trademarks and trade names, even to

3   the extent that trade names can't be trademarked.  But, you

4   know, at the end of the day, Progressive could only be assigned

5   what Nuovo Ricambi USA was in possession of, no more.  And I

6   think it's manifestly obvious from the briefing that the LLC,

7   as it's called, Nuovo Ricambi USA, LLC never had any trademark

8   rights, so it couldn't assign more than it had.  But in any

9   event, under Ninth Circuit authority, trade names are not

10  tantamount to trademarks.

11         THE COURT:  Okay.  Anything further you want to add on

12  that claim?

13         MR. CAMPBELL:  I would say that looking at the Ninth

14  Circuit authority, the trade names are given essentially the

15  same enforceability and the same effect with the exception of

16  some cases that talk about how the categories may be different

17  for characterizing the trade names under section 43 of the

18  Lanham Act, and so having a trade name effectively would give

19  us most of the relief that we're after.

20         THE COURT:  Okay.

21         MR. CAMPBELL:  I'm thinking specifically of the

22  *Accuride* case and some other cases that cite it.

23         THE COURT:  Okay.  And then turning to the remaining

24  claims in the original complaint, there are claims for federal

25  trademark infringement, false designation of origin, unfair

1   competition, a common law trademark infringement unfair

2   competition claim, and then the Business and Professions Code

3   17200 unfair competition claim.

4           I don't have a lot of questions.  I think the legal

5   arguments are spelled out clearly in terms of why the

6   defendants believe that you should not be allowed, as a matter

7   of law, to proceed with those claims as well, and it really

8   comes down to prior use under 15 U.S.C. 1115(b)(5) and what

9   flows from a prior use defense.

10          So again, I don't have a lot of questions.  I

11  understand the arguments.  I just want to give each of you an

12  opportunity if there's anything you want to add, and

13  Mr. Campbell, particularly in your case if there's anything you

14  want to respond to in the reply briefs, obviously because you

15  don't get to reply in writing with respect to those claims.

16          MR. CAMPBELL:  Yes, your Honor.  There are some things

17  that I would like to add both in the sense of the responding to

18  the reply but also there are some points that I don't think we

19  really got across as well as we might have in the opposition

20  brief.

21          THE COURT:  Okay.  Go ahead.

22          MR. CAMPBELL:  The place I want to start is making the

23  point that prior use is a shorthand for this concept, but the

24  cases make it clear it's prior and continuous use.

25          THE COURT:  Right.

1      MR. CAMPBELL:  And we went through these invoices.  I

2   supplied a summary of the contents of the invoices produced,

3   and they display a very clear series of interruptions in the

4   transactions in the United States.

5      THE COURT:  Right.  Except you saw their response to

6   that which is that argument ignores the fact that it was

7   continuous to your client throughout all the years, so you

8   can't ignore the fact that they were supplying your client.  So

9   it was in fact continuous throughout despite these, as you

10   point out, these years where there was -- at least appeared to

11   be a slowdown or a lack of use.  So that's really the point you

12   have to respond to.  That's the part in the reply briefs that

13   say how can you ignore that -- how can you argue it was not

14   continuous when in fact the plaintiff itself was receiving on a

15   continuous basis year after year the supply from the defendant.

16      MR. CAMPBELL:  Yes, your Honor.  I think examining the

17   facts in the case as closely and the analysis of the -- that's

18   used in those cases --

19      THE COURT:  Well, let me start with that do you

20   dispute that fact though?  That's an undisputed fact, right?

21      MR. CAMPBELL:  That my client bought parts from the

22   Italian SRL?

23      THE COURT:  Continuously for the entire period.

24      MR. CAMPBELL:  Yes, that's true.

25      THE COURT:  Okay.  So doesn't that defeat your

1   argument that there wasn't a continuous use?

2           MR. CAMPBELL:  No.  I think the focus of the analysis

3   in the cases is not on the sale to the distributor.  It's on

4   the sale to the consumer, right, the retail sale.  The cases

5   that they're relying upon for this imputing of the use in

6   commerce from the distributor sales to the supplier don't

7   support that conclusion.  I'm talking about the *Sengoku* case,

8   the cases -- the line of cases starting with that *Premier*

9   *Dental* and so on.  I can walk through what I see to be the

10  distinguishing features of that.

11          The first case in the line of cases is *Premier*

12  *Dental*.

13          THE COURT:  And what do you believe *Premier Dental*

14  holds --

15          MR. CAMPBELL:  Well --

16          THE COURT:  -- that allows you to maintain this claim?

17          MR. CAMPBELL:  The approach of the court there is that

18  they were dealing with a manufacturer in that situation which

19  we don't have in the situation here.  We have a supplier.  And

20  the question was that there was an assignment that was

21  threatened by or challenged by a third party.  The reason that

22  I've referred to this is this is the first instance where

23  there's a question of the effectiveness of the assignment even

24  though the rights are reserved to the assignor.  The focus on

25  who has the goodwill leads to *Sengoku* to apply it in a dispute

1    where the dispute is between a manufacturer and a distributor,

2    not a third party.  So that's -- as far as I could tell, that's

3    the origin of that idea.

4          The next one is *Omega Nutrition*, and that had to do

5    with a similar situation.  And it led to the development of

6    these four -- this four-part test.  Now as I understand this

7    four-part test, that's -- these cases are cases in which the

8    court had no -- it was difficult to tell what the first sale

9    was because the distributor and the manufacturer would both

10   claim that an initial transaction was there for sale and/or the

11   mark wasn't created or put into use until after the

12   relationship was established.  But for one reason or another

13   neither could, to the satisfaction of the court, prove being

14   first chronologically.

15         The point I want to make is neither the *Sengoku* case

16   or the *WATEC* case, *WATEC versus Lui,* which follows these

17   earlier ones that I've already cited, address my point.  And

18   the point we're making in this case is that the use was not

19   continuous.  That point has not come up in those cases.  They

20   are cases in which they appear to be using this four-part test

21   that's created in *Omega Nutrition* as a substitute for the fact

22   that the facts themselves and these relationships don't lend

23   themselves to identifying a transaction that should be

24   connected to either party.

25         So we get into this exception, and when it's a tie, if

1   you will in that sense, the courts had said okay, well, there's
2   a presumption in favor of the manufacturer, giving a
3   manufacturer here, it's going to be a presumption, but it's a
4   rebuttable presumption, and we're going to have this four-part
5   test that should be considered to break the tie if you will.
6   But those cases all -- none of them address the situation I'm
7   talking about with these breaks in the use, the sale to third
8   parties, and none of those cases will say directly that the --
9   or the Courts don't decide directly that the sale of the
10  distributor is to be imputed to the supplier.

11          THE COURT:  And I can -- I can imagine the lawyers on
12  the other side are going to respond that there's no case
13  supporting your point that a break in use of sale to a third
14  party when you also still have sales to a distributor is in
15  fact a break in the use.  In other words, there's no case to
16  support your view.  You're trying to distinguish their cases,
17  but there's no case that supports, at least the view that you
18  want me to adopt, that under the facts of this case you've
19  demonstrated that there were breaks in sales to third parties.
20  But the undisputed facts are also there was no break in sales
21  to Progressive itself.

22          MR. CAMPBELL:  I don't think we get to that point.
23  That's my argument.  We don't get to that point because, first
24  of all, all of these cases begin by saying, if there's a
25  written agreement, that controls.  And here we have a written

1    agreement that clearly is conveying the trade name to my client

2    and the goodwill.  So I think that that differentiates or

3    distinguishes our case from even the use of this approach of

4    the four-part test, the tie breaker as you will.

5              And then when you get into those cases, you'll find

6    that, for example, in *Sengoku* there's no mention made

7    whatsoever the continuity of the use, and there's an imputation

8    based upon representations that are made about the supplier in

9    that case being the owner of the trademark, and they're in the

10   writings that are produced in discovery by the distributor.

11             In the following case, that *WATEC* case, there's a

12   license there and the court says the license is sufficient.

13   And again we have cases after jury trial, and there's a heavy

14   preference given to the jury's conclusions which are

15   procedurally different than what we have in this case.  But

16   the *WATEC* court has that license and determines that that is

17   sufficient to conclude that the distributor is selling in the

18   name of the supplier, and that's a very different situation

19   than what we have here.

20             THE COURT:  Okay.  Let's stay on that point,

21   Mr. Peterson and Mr. Grant, you want to respond at all to that

22   argument?  I know you did so in the briefs, but anything you

23   want to add?

24             MR. GRANT:  Not that's already set forth in the brief.

25   Use is, we believe, exhibited through sales to Progressive, but

1    it's also through Progressive's own use of our name to sell the

2    products.  And so the use is demonstrated by the sales and the

3    advertising use that they use to sell our products.  Otherwise,

4    I'm going to rely on the papers.

5              THE COURT:  Okay.  Mr. Peterson, anything you want to

6    add?

7              MR. PETERSON:  The only thing I would add, your Honor,

8    to what's already before the Court in the briefs is that the

9    continuity of use as to La Marzocco has not been refuted.

10             THE COURT:  Right.

11             MR. PETERSON:  And so I think that having been said, I

12   think that the law of the Ninth Circuit is quite clear both in

13   the *Sengoku* case and the *Water Co.* case, those are cited on

14   page 7 of our reply.  I think the law is clear in that regard.

15   But irrespective of any discontinuity in use, there has been no

16   gaps established against La Marzocco.

17             THE COURT:  Why is La Marzocco named as a defendant?

18   I was going to get to them last, but let's pick that up now.  I

19   had a hard time figuring out why you named them as a

20   defendant.

21             MR. CAMPBELL:  Well, they were promoting the Sproparts

22   venture.  The president of La Marzocco is also the president of

23   Sproparts.

24             THE COURT:  Well, you named Sproparts but why

25   La Marzocco?

1    MR. CAMPBELL:  They were publishing literature to

2    promote Sproparts as the new Nuovo Ricambi, if you will.

3    THE COURT:  Right.

4    MR. CAMPBELL:  And that's why we named it.

5    THE COURT:  Okay.

6    MR. CAMPBELL:  It was use of the mark or the trade

7    name in the competition, and they were actively promoting it

8    and enabling it.

9    THE COURT:  Disagree with that, those facts.  Whether

10   it gives rise to a legal claim is another issue, but --

11   MR. PETERSON:  I mean, it really shouldn't matter

12   based on -- the primary basis for La Marzocco's motion is a

13   laches defense.

14   THE COURT:  Yeah.  But you also are part of the other

15   prior use defenses as well.

16   MR. PETERSON:  True, true.

17   THE COURT:  Okay.

18   MR. PETERSON:  Again, I mean, there hasn't been

19   anything to refute the Colello declaration as to the continuity

20   of use.

21   THE COURT:  Okay.

22   MR. CAMPBELL:  Your Honor, may I be heard?

23   THE COURT:  Yes, go ahead.

24   MR. CAMPBELL:  I'm going to come back to these

25   invoices, okay?  These are presented in discovery, and I

1  questioned Mr. Zanesi in his deposition about them.  He says

2  they were a complete set.  And they show huge breaks of time of

3  sales to La Marzocco, and this creates I think a material

4  question of fact as to the accuracy of these statements made by

5  Mr. Colello that during this entire period of time they were

6  selling goods acquired from Nuovo Ricambi S.R.L.  They didn't

7  get them from Nuovo Ricambi S.R.L.  I don't know where they got

8  them from because they didn't get them from the SRL because

9  there are no invoices to support that.  There are at one point

10 a seven-and-a-half-year gap where there's no sale to

11 La Marzocco.

12      THE COURT:  Okay.  I understand the argument.

13      I cut you off in the sense were there other points

14 that you wanted to raise in response to whatever you may have

15 seen in the reply briefs?

16      MR. CAMPBELL:  Yes, your Honor.  There are some that

17 I'd like to make.  I do -- I would like to go back, if I may,

18 to add to what we put in the opposition.

19      THE COURT:  As long as it's responsive to what's in

20 the reply, go ahead.

21      MR. CAMPBELL:  I'm not sure I understand.  There's

22 some evidence I would like to point out.

23      THE COURT:  You can't add new evidence or new

24 arguments at oral argument.  If you are responding directly to

25 something raised in the reply brief, then I'll allow you to, in

1    effect, supplement your record, but you can't suddenly raise

2    new arguments that they haven't had a chance to respond to.

3    That's the whole point of a reply brief.

4            MR. CAMPBELL:  Well, they're not new.  They're in the

5    documents that we provided, and they're in the separate

6    statement.

7            THE COURT:  Okay.

8            MR. CAMPBELL:  Yeah.  They're all in front of the

9    Court, and they've all been, you know, part of what was served

10   on the parties.

11           THE COURT:  Okay.

12           MR. CAMPBELL:  It's not new material in that sense.

13           THE COURT:  Okay.

14           MR. CAMPBELL:  I just don't think that this got

15   communicated as effectively as I would like to have seen it

16   communicated.

17           THE COURT:  Go ahead.

18           MR. CAMPBELL:  The point I want to make is that the --

19   when you -- if you look at the summary of the transactions at

20   Exhibit 117 where you see these gaps, I did not observe another

21   gap that's a two-year, one-month gap between the sale to --

22   last sale to Armando Espresso on March 25th, 2005, and the sale

23   to the East Coast customer, one of the sales that was done in

24   breach of the exclusive agreement of September 10th, 2007.  So

25   there's two years and four or five months' gap there in

1   addition to the ones that are identified in the red letters on

2   the right-hand column.  So we've got a total of three that are

3   over a year, one that's ten months, one that's three years, and

4   one that's two years.  So it's in the documents that have been

5   given to everybody, but I did not pick up on it when I put

6   together the summary.

7           THE COURT:  Okay.

8           MR. CAMPBELL:  The other thing I think that needs to

9   be -- I would like to draw your attention to is if you look at

10  this summary from the point of view of Mr. Lemos and his state

11  of mind at the time of the declaration that they allege

12  constitutes a fraud allowing them to set aside the -- or to

13  defeat the cause of action based upon a registered trademark,

14  you will see that in fact there are no transactions within five

15  years of that declaration at all except for those that he

16  wouldn't have known about because they were being done on the

17  side, on the sly, to these East Coast customers.  So part of

18  the proof has to be in this fraud allegation is that he knew

19  what he was saying was false when he executed the declaration

20  to the USPTO.  And, you know, it was not false, even going

21  beyond his state of mind and going to the actual facts, there

22  was more than a five-year gap.

23          The other thing is they keep dropping the last part of

24  that declaration off of the quotes when it's talked about.

25  There's a requirement and there's a provision in there that

1   says if a declarant is saying they are not aware of any other

2   use, that is likely to cause confusion in commerce.  And that

3   is explained in Mr. Lemos's declaration as to his state of mind

4   as to why that declaration could be executed truthfully because

5   he believed that all of these other uses were uses that were

6   not going to create confusion because they were, if you will,

7   side deals that weren't going to go to his customer base.

8        THE COURT:  And it's a nice segue to the last issue

9   that I wanted to raise with the defendants, and it's on the

10  motion for summary judgment on the counterclaim, the first

11  claim in the counterclaim, the cancellation of the trademark

12  claim, and following up on those comments.  I want to give you

13  an opportunity to address those comments, but I tend to agree

14  with Mr. Campbell that on that issue, the fraud and the

15  procurement issue, that there is a genuine issue of material

16  fact.  It really is -- I know you want me to draw an inference

17  that because the statements used for registration purposes were

18  not true, were false, that I can draw from that inference that

19  Mr. Lemos had the intent to induce the PTO.

20       And given all the facts that have been submitted to

21  the Court and the evidence submitted, in particular both at

22  deposition and the declaration, even if you sustain the

23  objections to the declaration itself, raise a genuine issue of

24  material fact on the intent to issue.  Your argument is, Judge,

25  you can draw that, an inference, in a summary judgment stage.

1    I'm very reluctant to draw that type of inference particularly

2    when the evidence has to be viewed in the light most favorable

3    to the opposing party.

4         If you want to add anything, that's fine, but I can

5    tell you honestly that's where I'm headed with respect to that

6    motion.  I just think it's an issue that a jury should decide,

7    not a court at a summary judgment stage.

8         MR. GRANT:  Thank you, your Honor.  So our

9    counterclaim for cancellation is predicated on two grounds.

10   The first, as you noted, is the fraud.  It should be canceled

11   based on fraud.  But the second ground is the prior continuous

12   use by a senior user, and this is part and parcel with the

13   discussion that we've had up until now.  The cancellation is

14   appropriate for all of the reasons that their infringement

15   claims fail is that there's a prior senior user out there that

16   invalidates their trademark.

17        THE COURT:  Mr. Peterson, you want to add anything?

18        MR. PETERSON:  Well, even if the Court ultimately

19   rules as its indicated, that we would go to trial on the fraud

20   claim, the issue of Mr. Lemos's intent when he filed the

21   registration papers with the PTO, I think on this record

22   there's abundant evidence to support cancellation based on the

23   prior use, or if not cancellation, the Court could properly

24   rule on summary judgment that the plaintiff can assert, you

25   know, no claim.  So there are cases, at least one, that talks

1   about even where the court stops short of cancellation, it

2   issues a declaratory-type judgment that the plaintiff can't

3   assert any claims against the prior users or those protected by

4   prior use.

5          The other minor comment I would make on the issue of

6   Mr. Lemos's intent -- and I appreciate the Court's, you know,

7   rulings on the evidentiary objections, but something that

8   Mr. Lemos said in his declaration really kind of tickles the

9   issue of judicial estoppel.  I mean, what he's told the Court

10  in his declaration is that I was aware of La Marzocco's rights

11  to import and sell in the United States.  I was aware of

12  Armando Espresso's similar rights.  I just didn't take any

13  action on it because, eh, you know, I didn't think it was a big

14  deal.  So and I noticed --

15         THE COURT:  Right.  They were selling to Starbucks.

16         MR. PETERSON:  Right.  Okay.  But I mean what he's

17  saying is, for purposes of defending against our laches claim,

18  he's telling your Honor, you know, my delay was not

19  unreasonable because, yeah, I knew they were out there, but I

20  didn't think it was a big deal.  That doesn't harmonize with

21  his declaration testimony regarding what he intended when he

22  submitted the registration filings with the trademark office.

23         So he's telling the Court two slightly different

24  stories.  And I just wanted to point that out because I

25  understand where the Court's headed or where its tentatively

1    headed.  And it's a little bit of a wobbler on summary judgment
2    where there's state of mind at issue, but I think the Court
3    would rightly take note of the inconsistent statements under
4    oath by the plaintiff.

5           THE COURT:  So Mr. Campbell, coming back to you,
6    assuming I agree with you that there's a genuine issue on the
7    fraud defense, the second issue is also what they're arguing
8    would give the Court a basis for granting summary judgment on
9    the cancellation of the trademark, and that is the prior
10   continuous use by a senior user.  What's your response to that,
11   if that's the grounds for granting summary judgment on the
12   cancellation of the trademark?  Isn't it undisputed that there
13   was --

14          MR. CAMPBELL:  We contend there wasn't continuous use.
15          THE COURT:  Okay.  So it comes back to your
16   argument.

17          MR. CAMPBELL:  Yes.  It goes back to the argument.
18   And as far as being inconsistent in the declaration, I don't
19   believe that's the case.

20          THE COURT:  You don't have to worry about that.  I'm
21   just focused on this prior continuous use.  And again, your
22   response to that is, as a matter of law, prior continuous use
23   wouldn't include sales to Progressive?

24          MR. CAMPBELL:  That's correct.
25          THE COURT:  Okay.

1          MR. CAMPBELL:  Yeah.  I mean, the *Casual Corner* case I

2     cited in the brief deals with a situation in the -- it's an

3     1125 cause of action there.  But these cases all line up pretty

4     good on any of the theories in terms of the continuity of use,

5     and I've found a number of cases that, you know, expressly say

6     that the -- this applies to the 1125 action.  So we're back to

7     that continuous use requirement, and I don't think that they

8     have continuous use.  So the fact that their use is earlier

9     doesn't get them there.

10          THE COURT:  And again, you believe you have continuous

11     use because it's undisputed that there was continued sales to

12     Progressive, at a minimum?

13          MR. GRANT:  At a minimum.

14          THE COURT:  Okay.  You don't dispute the breaks that

15     the invoices show or that he discovered or at least that would

16     create an issue as to whether there was continuous use to third

17     parties?  I mean, you really can't dispute that because that

18     creates an issue of fact.

19          MR. GRANT:  Correct, your Honor.  We don't dispute the

20     validity of those invoices, and there are no additional sales

21     from us or from the Italian company to the American distributor

22     during those windows.

23          THE COURT:  Okay.

24          MR. PETERSON:  Your Honor, on that point --

25          THE COURT:  Go ahead.

1          MR. PETERSON:  -- La Marzocco does dispute the

2     contention that there was any gap in use or importation and

3     sales by them.  The invoices that were presented to you in the

4     opposition came from discovery responses from Nuovo Ricambi.

5     La Marzocco's never answered any discovery responses in this

6     case.  They were never asked, give us all the records to

7     support your continuous use.  So I just want to point out to

8     the Court that I don't think there's anything close to a proper

9     evidentiary record that would break La Marzocco's continuity of

10    use in the evidence that they've presented.

11         THE COURT:  I guess my response to that is but it's

12    your summary judgment motion, so did I miss something, or did

13    you present evidence on behalf of La Marzocco that shows that

14    there was continuous use?

15         MR. PETERSON:  Yes, the Colello declaration does

16    that.

17         THE COURT:  Okay.  And there's nothing to dispute that

18    in the opposition?

19         MR. PETERSON:  No, sir.

20         MR. CAMPBELL:  We believe there is.

21         THE COURT:  What do you believe?

22         MR. CAMPBELL:  There was invoices.

23         THE COURT:  Well, are there any invoices from

24    La Marzocco?

25         MR. CAMPBELL:  There are no invoices from La Marzocco

1     to third parties, and all the invoices we have, where else

2     would they have gotten these parts but from the party that

3     comes to the court saying they have the first use, they have

4     the primary right to the trademark, and that contend that they

5     have been continuing to use it all this time.  So I don't know

6     where they got the parts Mr. Colello is talking about, but from

7     what we see in evidence, it isn't from this Italian company.

8           THE COURT:  So what's the response to that,

9     Mr. Peterson?

10          MR. PETERSON:  The response to that is that

11     La Marzocco shouldn't be bound by discovery responses from --

12          THE COURT:  I agree.  But you still have to prove that

13     there was --

14          MR. PETERSON:  Right.

15          THE COURT:  -- continuous use.

16          MR. PETERSON:  Right.

17          THE COURT:  And other than, in effect, some would

18     argue a self-serving declaration, what supports his

19     declaration?  What evidentiary support is there?

20          MR. PETERSON:  Well, he gave detailed evidentiary

21     statements about what they've done for the past 20 years, and

22     they not only imported and distributed in the United States,

23     they sold the rights at one point to another company by the

24     name of Franke.  And then later I think it was in 2008 they

25     bought the rights back.

1                THE COURT:  Right.

2                MR. PETERSON:  So what I'm hearing is that the

3        plaintiff wants to challenge the evidence that we've submitted

4        of continuous use over the past 20 years by saying, well, wait

5        a minute.  The invoices from Nuovo Ricambi don't show sales to

6        La Marzocco.

7                THE COURT:  Right.

8                MR. PETERSON:  And what I'm saying is that isn't

9        sufficient evidence to overcome what we've presented.

10               THE COURT:  I understand.

11               MR. PETERSON:  Okay.

12               MR. CAMPBELL:  It's a disputed fact.

13               THE COURT:  All right.  We're going to take a break.

14       I'm going to take a look at a few things, and I'll come out.  I

15       actually am prepared to rule on the motions this afternoon, but

16       I want to look at a few more things.  Okay.  Give me about ten

17       minutes.

18               (Recess taken 2:20 p.m. to 2:33 p.m.)

19               THE COURT:  All right.  The Court is prepared to

20       render its decision on the remaining motions for summary

21       judgment.  I will not be preparing a written opinion.  The

22       Court's comments here during the oral argument will serve as

23       the Court's opinion.  If anyone wants to order a transcript,

24       you're free to do that, but there will not be a follow-up

25       written opinion as well.

1          All right.  Let's start with the breach of contract
2     claim and the defendant's -- NRSRL's motion for summary
3     judgment on that claim.  Progressive has brought a breach of
4     contract claim against NRSRL alleging that they -- it breached
5     the asset sales agreement by not providing the trademark rights
6     it promised to provide to Progressive, instead using the
7     trademark rights for its own benefits.  A breach of contract
8     claim requires a plaintiff to show the existence of a valid
9     contract, plaintiff's performance or excuse for nonperformance,
10    defendant's breach and the resulting damage to the plaintiff,
11    NRSRL has argued that the Court should grant summary judgment
12    on this claim for two reasons.  First, that it was not a party
13    to the asset sale agreement, and second that the asset sale
14    agreement in fact did not purport to transfer ownership of
15    NRSRL's trademark.

16         Progressive has argued that NRSRL was a party to the
17    asset sale agreement because Mr. Zanesi was acting as an agent
18    of NRSRL when he signed the contract.  Specifically,
19    Progressive argues that, quote, an agent acting within his
20    apparent or ostensible authority binds the principal where the
21    principal has intentionally or negligently allowed others to
22    believe the agent has this authority.  Progressive bases this
23    argument in part on a representation that NRSRL made before
24    Progressive signed the asset sales agreement that's
25    Exhibit 101.

1        It says the firm Nuovo Ricambi SNC/Italy authorizes

2   Zanesi Marcello to sign for our name the possible documents

3   that concern us.  The scope of an agent's authority is a

4   question of fact, but to summary judgment, a disputed question

5   of fact must be material.  Here the question of whether

6   Mr. Zanesi was acting as an agent of NRSRL is immaterial the

7   Court finds because Progressive cannot prove breach either way.

8   The asset agreement does not, as Progressive contends, purport

9   to transfer NRSRL's trademark rights.

10       Rather the agreement includes the sale of Nuovo

11  Ricambi USA, LLP's, quote, trade name and goodwill, closed

12  quote.  That's Exhibit 103 to the opposition.  Progressive does

13  not and cannot identify any place in the agreement that

14  mentions a, quote, trademark, closed quote, or quote, mark,

15  closed quote.  It simply contends and argues that goodwill is

16  inseparable from trademark rights.

17       But as NRSRL argues, a trade name is not the same as a

18  trademark, citing *Self-Realization Fellowship Church versus*

19  *Ananda Church of Self-Realization*, a Ninth Circuit case from

20  1995.  A trade name symbolizes the reputation of a company or

21  organization and the activities it engages in.  A trademark, on

22  the other hand, is used to identify and distinguish the various

23  products sold by that business.  A designation may be a trade

24  name.  A trademark, neither or both.  But a designation used

25  only as a trade name cannot be federally registered as a

1  trademark.

2      While true that a trademark may not be sold without

3  also conferring a business's goodwill, a business's goodwill

4  can be transferred without selling its trademark, and that's

5  what we have in this case.

6      The basic rule of trademark assignments is that a

7  trademark cannot be assigned to another separate from the

8  goodwill associated with that mark.  And again that's the

9  holding in *Self-Realization Fellowship Church* in which the

10  court held that a trade name symbolizes a business and its

11  goodwill.  But Progressive's argument that, quote, goodwill,

12  closed quote, is synonymous with trademark fails as a matter of

13  law.  There is nothing in the asset sales agreement that

14  compelled NRSRL to sell Progressive the trademark rights to

15  Nuovo Ricambi USA, LLC, and absent such a term, Progressive's

16  claim that NRSRL breached the asset agreement cannot stand; and

17  the Court therefore grants NRSRL's motion for summary judgment

18  on Progressive's breach of contract claim.

19      Progressive's complaint also alleges trademark claims

20  and an unfair competition claim under Business and Professions

21  Code Section 17200.  NRSRL argues that it is entitled to

22  summary judgment on all of these claims.  To succeed on its

23  motion for summary judgment, NRSRL must overcome two hurdles.

24  First it must prove that incontestable status of Progressive's

25  trademark does not apply, and then it must prove that its use

1    of the Nuovo Ricambi trademark is senior to Progressive's.  The

2    Court does find that NRSRL has made both of these showings

3    because it has and obviously the other defendants will benefit

4    from the Court's rulings as well.

5         In terms of the incontestable mark issue under 15

6    U.S.C. Section 1065, a registered trademark becomes

7    incontestable after the mark has been in continuous use for

8    five consecutive years subsequent to the date of registration

9    if certain conditions are met.  To the extent that the right to

10   use the registered mark has become incontestable under section

11   1065, the registration shall be conclusive evidence of the

12   validity of the registrant's exclusive right to use the

13   registered mark in commerce.  That's 15 U.S.C. Section 1115(b).

14        Section 1115(b), however, does contain nine defenses

15   to a trademark's incontestable status.  When a party proves one

16   of these defenses, then the registrant's previously

17   incontestable registration is no longer conclusive evidence of

18   its right to use the registered mark.  It becomes only

19   prima facie evidence of that right.

20        A challenger may rebut a registrant's prima facie

21   claim to a trademark by proving his use of the mark has

22   priority over the registrant's.  In this case NRSRL contends

23   that it is entitled to summary judgment on Progressive's

24   trademark infringement, false designation of origin and unfair

25   competition claims because the defenses in Sections 1115(b)(1)

1   and 1115(b)(5) bar these claims as a matter of law.

2         The Court finds that the 1115(b)(1) defense raises

3   disputes of material fact and therefore would preclude summary

4   judgment under that argument. That's the fraud and the

5   procurement claim. NRSRL is, however, the Court finds,

6   entitled to claim the Section 1115(b)(5) defense.

7         Just very briefly, as I mentioned during oral argument

8   and the questions that I raised, I do think there is a genuine

9   issue of material fact as to intent that the plaintiffs have

10   raised sufficient facts to raise a genuine issue on the intent

11   issue under the 1115(b)(1) fraud in a procurement defense. And

12   so I'm not going to spend a lot of time on that, but I think

13   there is again sufficient evidence to preclude the Court from

14   granting summary judgment because of the intent to deceive

15   requirements under that section.

16         On the 1115(b)(5), the prior use defense the Court, as

17   I mentioned, does find this to be a valid defense as a matter

18   of law and entitles the defendants to summary judgment for

19   these reasons: A registered trademark loses its incontestable

20   status when the purportedly infringing mark was adopted without

21   knowledge of the registrant's prior use and has been

22   continuously used by such party from a date prior to the date

23   of constructive use of the mark established. To prove this

24   defense, the defendants must show, first, that it adopted the

25   use of the disputed mark without knowing about the registrant's

1   prior use.  And 2, it has continuously used the mark from a

2   point in time prior to the mark's registration until the

3   present.  That's the *Casual Corner Associates* case, a Ninth

4   Circuit case from 1974.

5       The Court finds that Progressive has failed to

6   identify a genuine disputed material fact that would preclude

7   NRSRL from availing itself of the prior use defense under 15

8   U.S.C. Section 1115(b)(5).  A defendant claiming the prior use

9   defense must show it has common law rights to the mark that

10  predate the mark's registration.  Establishing common law

11  rights to a trademark requires that party to show that it used

12  the mark in commerce.  Courts have determined whether a mark

13  was used in commerce under a totality of the circumstances test

14  considering factors such as market penetration, advertisements,

15  participation in trade shows, et cetera.

16      In this case it is undisputed NRSRL adopted use of the

17  Nuovo Ricambi mark without knowing about the registrant's prior

18  use.  As early as 1994, before NRSRL had a domestic

19  distributor, it did in fact attend trade shows in the

20  United States to promote its brand and services.  It also sold

21  products to at least two United States customers, La Marzocco

22  and Armando Espresso.

23      Progressive does not and cannot contend that it used

24  the Nuovo Ricambi USA mark before becoming NRSRL's domestic

25  distributor, nor does it or can it dispute the adequacy of

1   NRSRL's initial use of the Nuovo Ricambi mark in commerce.   In

2   fact, the Court finds that NRSRL has satisfied the first

3   element of this prior use defense.

4       The second element is this continuous use, and

5   Progressive has attempted to raise a genuine issue of material

6   fact as to the continuous use element.  The Court does not find

7   as a matter of law that is sufficient.  There is no genuine

8   dispute about whether NRSRL has continuously used its mark

9   within the United States from a time before the mark's

10  registration until present if you include the sales to

11  Progressive.  And I'll get to that.

12      Continuous usage requires sufficiently public usage to

13  identify or distinguish the marked goods or services in an

14  appropriate segment of the public mind as those of the adopter

15  of the mark.  Use of the mark must be bona fide and made in the

16  ordinary course of trade.  It must be deliberate and

17  continuous, not sporadic, casual, or transitory.  In *Casual*

18  *Corner* the Ninth Circuit found a gap in sales of one year was

19  enough to render a party's claimed use noncontinuous.

20      Progressive has argued that in its summary of NRSRL's

21  invoices there is reflected gaps in NRSRL's sales to the

22  United States, three gaps of a little over one year, one gap of

23  a little over three years, and an additional gap that

24  Mr. Campbell mentioned today during oral argument.  But as

25  NRSRL identifies in the reply, Progressive's summary completely

1  excludes NRSRL's sales to Progressive from 1998 to 2016. And
2  the Ninth Circuit has previously found that courts consider a
3  foreign supplier's sales to its United States distributor in
4  the continuous use analysis.

5       The *WATEC Co.* case that we discussed clearly is
6  similar, and in that case the Ninth Circuit found that the sale
7  by a foreign supplier to its United States distributor did
8  satisfy the continuous use. The facts were similar in *WATEC*.
9  The court held that a person claiming senior rights in a
10 trademark must establish not only that he or she used the mark
11 before the mark was registered, but also that such use has
12 continued to the present. Watec Japan argued that it can
13 establish continuous use during the time between Watec
14 America's formation and Genwac's formation based on Watec
15 America and Liu's use because Watec America and Liu were using
16 the marks as Watec Japanese licensees during that time period.
17 While it may have been a license, it still involved sales from
18 a supplier to a distributor, and I think *WATEC* is instructive
19 on that legal point.

20      NRSRL also contends that it continuously sold parts
21 and accessories into the United States marked under the Nuovo
22 Ricambi brand since 1989. That's the same undisputed fact
23 number 7. Progressive does purport to dispute this statement,
24 but Progressive has failed to provide any evidentiary support
25 for the notion that there was any gap whatsoever in NRSRL's

1   sales to Progressive during the pendency of the 1998

2   distribution agreement.  Therefore, there is no disputed fact

3   that is genuine and cannot be used.  There's no disputed fact

4   that can be used to preclude summary judgment.  The Court finds

5   on this issue that NRSRL's claim to the prior use defense under

6   Section 1115(b)(5) is meritorious.

7        While overcoming a trademark's incontestable status

8   does not in and of itself defeat the registrant's trademark

9   infringement claim, devoid of its incontestable status,

10  registration of a trademark is still prima facie evidence that

11  the registrant is the owner of the mark.  But a nonregistrant,

12  in this case NRSRL, can rebut this presumption by showing that

13  the registrant had not established valid ownership rights in

14  the mark at the time of registration.  The nonregistrant must

15  make this showing by a preponderance of the evidence.

16       The standard test of ownership in trademark law is

17  priority of use.  In this sense, the test for trademark

18  ownership is synonymous with the first element with a prior use

19  defense to incontestability.  To acquire ownership of a

20  trademark, the party claiming ownership must have been the

21  first to actually use the mark in the sale of goods or

22  services.  As the Court has discussed, it is undisputed that

23  NRSRL was the first to use the Nuovo Ricambi mark.  NRSRL's use

24  of the Nuovo Ricambi mark therefore clearly has priority over

25  Progressive's use of Nuovo Ricambi USA.  Because NRSRL's use of

1    the Nuovo Ricambi mark is senior to Progressive's use of the

2    Nuovo Ricambi USA mark, Progressive cannot show it has an

3    ownership interest in NRSRL's mark.  And absent a protectable

4    ownership interest, Progressive's trademark infringement claim

5    fails as a matter of law.

6         For those reasons, the Court grants NRSRL's motion for

7    summary judgment on Progressive's first cause of action for

8    federal trademark infringement.  On the second cause of action

9    for a trademark infringement, false designation of origin and

10   unfair competition, and on the third caution of action for

11   common law trademark infringement unfair competition claim.

12   With summary judgment being granted on those claims, the

13   Business and Professions Code Section 17200, the unfair

14   competition, the state law claim fails as a matter of law since

15   it is derivative and dependent on those other claims.  So the

16   Court does grant summary judgment in its entirety on all the

17   claims in the complaint brought by Progressive against NRSRL.

18        The complaint also alleges trademark infringement

19   false designation of origin and unfair competition claims

20   against La Marzocco and Sproparts.  La Marzocco and Sproparts,

21   as they argue, are entitled to summary judgment on each of

22   these claims as well because -- and the Court has found that

23   NRSRL's rights to the Nuovo Ricambi mark are senior to

24   Progressive's.

25        I'm not going to and do not have to reach the

1    equitable defenses arguments, laches, acquiescence, and unclean

2    hands given the Court's findings that the prior use entitles

3    La Marzocco and Sproparts to summary judgment.  So therefore,

4    with respect to those two defendants on their summary judgment

5    motions, those are granted, and the complaint is dismissed

6    against them as well.

7          That leaves the motion for summary judgment by NRSRL

8    on its cancellation of the mark claim.  There are again two

9    bases for this motion claiming that, first of all, because

10   Progressive fraudulently procured its registration that NRSRL

11   would be entitled to a cancellation of the trademark, I have

12   already found there are genuine issues and genuine disputes of

13   material fact that would preclude granting summary judgment on

14   that grounds, but because of the Court's findings on prior

15   continuous use because prior continuous use would entitle NRSRL

16   to summary judgment on the cancellation of trademark claim, for

17   all those reasons the Court does grant the motion for summary

18   judgment on the cancellation of a trademark claim brought in

19   the counterclaim.

20         That is the Court's rulings.  If anyone wants again

21   a -- we'll prepare a minute order that will reflect the Court's

22   rulings.  The transcript also obviously will stand as a basis

23   for the Court's rulings.  If there is any need for a written

24   order, my suggestion is you can submit one, put it on the

25   docket, and attach the transcript which is probably the easiest

1   way to do that.

2          Okay.  I think there's a pretrial conference since the

3   counterclaim still is active.  Mr. Peterson, your clients are

4   out, I think.

5          MR. PETERSON:  Right.

6          THE COURT:  When is the pretrial, Mr. Vine?

7          THE CLERK:  October 4th, your Honor.

8          THE COURT:  Okay.  So October 4th is the pretrial.

9   We'll see all of you then.  Thank you.

10         MR. GRANT:  Thank you, your Honor.

11         (The proceedings adjourned 2:56 p.m.)

12                        --oOo--

13  I certify that the foregoing is a true and correct copy of the

14  transcript originally filed with the clerk of court on 9/5/19,

15  Docket No. 44, correcting the transcript at page 41, line 15,

16  changing the word "wouldn't" to "would."

17                        /s/ Kacy Parker Barajas

18                        _____
                          KACY PARKER BARAJAS
19                        CSR No. 10915, RMR, CRR, CRC

20

21

22

23

24

25